Sprigg *vs.* Lyles, *et al.*—1830.

</div>

SPRIGG *vs.* LYLES AND WIFE, AND RICHARD LYLES *Cross Appeals, June,* 1830.

A mortgage omitted to be recorded in due season from no fraudulent design, will, under the act of 1785, ch. 72, sec. 11, be decreed to be recorded, saving the rights of subsequent purchasers without notice of its existence; and upon a bill filed by the mortgagee, a sale of the mortgagor's interest at the time of its execution, will also be decreed with a like saving.

A mortgagee solicited a third party to purchase land, mentioned in his unrecorded mortgage, at sheriff's sale, under a judgment against the mortgagor, obtained after its execution, and for which, in fact, the mortgagee was responsible as surety. At the sale, notice of the mortgage was publicly given. The object was to obtain the land at a low price for the mortgagor and his family; but the scheme being defeated, and the party solicited having given full value for the land, such mortgage cannot be recorded without saving his rights.

Where the security which an unrecorded mortgage gives to a debt, has been abandoned for other security given by the debtor, and accepted by the creditor, such mortgage will not be decreed to be recorded.

APPEAL from *Montgomery* County Court, as a Court of Equity.

The bill filed on the 16th of October, 1823, by *John Sprigg* against *Robert Lyles* and *Juliet* his wife, and *Richard Lyles*, stated, that the said *Robert*, being indebted to the complainant, in the sum of $2000, with interest from 21st July, 1817, for the purchase money of several tracts or parcels of land, sold by complainant to the said *Robert*, executed, together with his said wife *Juliet*, a mortgage of said lands to complainant, on the 3d December, 1819, for the purpose of securing the payment of the same, the complainant having conveyed the lands so sold to the said *Robert*, to his said wife *Juliet*, at his the said *Robert's* request. The bill further charges that the mortgage so as aforesaid executed by *Lyles* and wife, to complainant, was not recorded within the time required by law, which omission to record, was the effect of accident, and not the result of any fraudulent design, upon any one whatsoever. It is also alleged that some time in the year 1822, the interest of the said *Robert Lyles*, in the said lands, was sold by the sheriff of *Montgomery* County, in virtue of several writs of *fieri facias*, issued upon judgments rendered by *Montgomery* County Court against the said *Robert*, which judgments were upon, contracts, or agreements of the said *Robert*, made, and entered into, before the date of the before mentioned mortgage to complainant. That at the sale so made by the sheriff, the defendant *Richard Lyles*, became the purchaser, though he, as well as other persons present, were expressly notified on the day of sale, and before the sale, of the existence of the mortgage to complainant, and that the debt thereby intended to be secured was unsatisfied— the complainant therefore charges and avers, that the said *Richard*, bought with notice, that the purchase money for said lands was then due. The bill prayed that the defendant, *Robert Lyles*, may be decreed to pay the said purchase

money with interest, by a certain day, and in default thereof, that the lands in the mortgage contained may be sold, for the payment of the same, that said deed of mortgage may be admitted to record, and for further relief.

*Exhibit* A. is a copy of the mortgage from *Lyles* and wife, to complainant, executed and acknowledged on the 3d of December, 1819.

. The *answer* of *Richard Lyles* states, that he became the purchaser of the lands in the mortgage contained, at a sale made of the same, by the sheriff of the county, as alleged in the bill, and that he has paid the said sheriff the purchase money. That prior to the sale, the complainant advised this defendant, to become the purchaser of said lands, stating, at the same time, that a certain *Leonard Hays*, would probably bid them up, to a high price, but that he, the said *Sprigg*, would prevent his doing so, by apprising him of the existence of his mortgage on the property. That defendant objected to buying the said property, and remarked to the complainant, that at some future time, he might attempt to charge the same with his mortgage debt; which the said complainant then said, he never would do, and could not if such were his desire. That said mortgage was of no avail, and that it had been discharged by an assignment by *Robert Lyles*, to him, of bonds due from *Otho Sprigg*, of *Frederick* county. That confiding in the statements so made to him by the complainant, this defendant purchased the lands as before mentioned, which he would not under other circumstances have done. The defendant further states, that a portion of the money due on the bonds of *Otho Sprigg*, assigned as before mentioned, has been paid to the complainant, and that the balance is secured by a lien on valuable real estate in *Frederick* county. He admits that the judgments on which the first writs of *fi. fa.* issued may have been obtained, on contracts entered into by the said *Robert Lyles*, prior to the date of the paper filed by the complainant, purporting to be a mortgage.

The *answer* of *Robert Lyles* and wife, admits the debt from the said *Robert* to complainant, as charged in the bill, to secure the payment of which, they allege, that the said *Robert* agreed to assign to complainant, the three several single bills of a certain *Otho Sprigg*, of *Frederick* County, which single bills, were given on account of the purchase money of a valuable real estate in said County, upon which they were liens. That the complainant agreed to accept the said assignments as the only security for the debt, due by the said *Robert* to him. The defendant, *Robert*, states, that the complainant requested him, not actually to execute the assignments, but to permit the bills still to appear as his property, alleging as a reason therefor, that the said *Otho*, (who was his brother-in-law,) would in that case, pay them more promptly than if they were actually assigned to him. That on the 3d December, 1819, the said *Robert*, and complainant, being then about to set out for the western country, the said mortgage was executed, to guard against death or accident during their absence, and to show the balance due, and for no other purpose. That in the year 1821 the defendant, *Robert*, finding his circumstances much embarrassed, and that he might be compelled to apply for the benefit of the insolvent laws, informed the complainant thereof, and that the assignments of the bonds of *Otho Sprigg*, theretofore agreed on, must then be executed, or that in the event of his petitioning, he should be compelled to return them, as a part of his effects; upon which the complainant agreed to accept the assignments, and they were accordingly executed, and the bills delivered to him.

The defendants further state, that complainant has received about one hundred dollars, on account of said single bills. They admit that judgments were rendered against the defendant, *Robert*, in *Montgomery* County Court, as alleged by complainant, and that writs of *fi. fa.* issued as stated; and they believe they were rendered on contracts made prior to the date of the pretended mortgage to complainant. They deny that the omission to record said mortgage was the

result of accident, as averred by the complainant, who, they affirm, knew perfectly well that recording was essential to its validity. They further say, that the single bills assigned the complainant as before mentioned, are now in suit in *Frederick* County Court for his use.

*A commission* issued, under which, the execution of the deed from the complainant to the defendant, *Juliet Lyles*, and the mortgage from *Lyles* and wife to complainant, as alleged in the bill, were duly proved by the magistrates before whom the same were acknowledged. It was also proved by the then deputy sheriff of *Montgomery* County, that on the 25th of September, 1822, he made sale of the lands in the mortgage mentioned, under writs of *venditioni exponas*, against the said *Robert Lyles*, after due and legal notice thereof, and that *Richard Lyles*, one of the defendants, became the purchaser of the same. That on the day of sale, and while the sale was proceeding, the complainant gave notice to the bidders, and others present, that he had a mortgage on the land, amounting, principal and interest, to about $2400, or $2500. That *Leonard Hays*, who was present, stated, that he had understood that complainant had a mortgage on the land in dispute, but not for so large an amount as he had stated; upon which *Richard Lyles* mentioned, that he had always understood complainant's mortgage was for as much as $2000. It was proved on the part of the defendants, that $100 had been paid to complainant in August, 1819, on account of *Otho Sprigg's* notes, assigned him by the defendant *Robert Lyles*. It was further proved, that the complainant, upon being informed by the deputy sheriff who made the sale, that he had writs of *capias ad satisfaciendum* against *Robert Lyles*, told him, the said deputy, that he would rather he should get *fi. fa's.* because he, the complainant, was security for said *Robert*, and would show the sheriff his property at any time. There was proof of some conversations between the complainant and *Richard Lyles*, in which the complainant apprised the said *Richard*, that one *Hays* would probably buy the land, and in that event, *Robert Lyles* would be

turned out of his house. This, complainant said, he was determined to prevent, and for that purpose declared, that he would let it be understood that he had a lien on it, which *Hays* would believe, if he, *Richard*, would not contradict it. It was proved that the single bills of *Otho Sprigg*, the assignment of which to complainant, by *Robert Lyles* was proved, amounted together to three thousand dollars, with interest from the 15th October, 1818. There was no evidence to show the precise understanding of the parties at the time of the assignment, whether they were received as a payment of the debt due from *Robert* to complainant, or merely as collateral security, but subsequently, complainant was proved to have said that they were taken as collateral security for the mortgage, and in part to indemnify the complainant against some responsibilities he had assumed for the said *Robert*. It was in evidence that these single bills were given by *Otho Sprigg* for the share of *Lyles* and wife, in some real estate in *Frederick* county.

The County Court, (KILGOUR and WILKINSON, A. J.) at March Term, 1828, passed the following decree:

This cause being ready for decision, the proceedings were carefully read and considered. It is thereupon, this 18th day of April, 1828, decreed by *Montgomery* County Court, as a Court of equity, that the deed of mortgage mentioned in the complainant's bill, from the defendants *Robert Lyles* and *Juliet Lyles*, dated, and executed on the 3d day of December, 1819, be recorded among the land records of *Montgomery* County, provided always, that such deed shall not destroy, or in any manner affect, any title that *Richard Lyles* may have acquired, as purchaser of said premises, at the sheriff's sale mentioned in the proceedings, or the title of any other purchaser of the premises, in case of a purchase, made after the date of the deed aforesaid, and without notice of such deed by the person making such after-purchase, whether such purchase be by contract, or by deed, recorded agreeably to law, nor shall such deed, though recorded as aforesaid, in any man-

ner affect the creditors of the party making such deed, who may have trusted such party after the date of said deed. And it is further decreed, as aforesaid, that the complainant's bill of complaint be dismissed, as against *Richard Lyles*, one of the defendants in this cause; and that unless the defendants *Robert Lyles* and *Juliet Lyles*, on or before the 29th May, 1828, pay to the complainant, or bring into this Court to be paid to him, the sum of $3280, with interest, &c. all the right, title, interest and estate of *Juliet Lyles* and *Robert Lyles*, to the property in the proceeding mentioned, shall be sold, for the payment of the same, &c.

From this decree, the complainant, and *Robert Lyles* and wife appealed to the Court of Appeals.

The cause was argued before Buchanan, Ch. J. Earle, Martin and Archer, J.

*Forrest*, and *Magruder*, for the appellant, *John Sprigg*, contended:

1. That the decree ought to be reversed, and a new decree made, ordering the mortgage to be recorded, and the land sold, without excepting the life estate purchased by *Richard Lyles*, and 2d. That if the bill as to *Richard* should have been dismissed, it ought to have been without prejudice. The act of assembly of 1785, *ch. 72, sec. 11*, saves the right of those creditors only, who become such subsequently to the date of the mortgage, and without notice. This is not the case with *Richard Lyles*, who bought under judgments rendered on claims existing anterior to the mortgage, of which he was fully notified, at the time of his purchase, and before. The mortgage could not have been executed for the mere purpose of liquidating the amount of the debt from *Lyles* to complainant, because, at the period of its execution, the notes of *Otho Sprigg*, it is said, were in his hands, for that very purpose. Before complainant's deed to Mrs. *Lyles*, he was satisfied to rest upon the security of *Otho Sprigg's* single bills, as until then he retained the legal title. When called upon to

part with that, he required the additional security of a mortgage, and accordingly we find that both instruments were executed on the same day. It is impossible to suppose, that complainant would have consented to abandon his lien for the purchase money, on the faith of *Robert Lyles*, guaranty of *Otho Sprigg's* paper, as it is shewn, that *Lyles* at that very time was on the eve of becoming an insolvent petitioner. They referred to the acts of 1785, *ch.* 72, *sec.* 11. 1792, *ch.* 41, *sec.* 3. *Bowie's adm'x vs. The State, use Dryden,* 7 *Harr. and Johns.* 33. *Pannel and Smith vs. The Farmers' Bank,* 7 *Harr. and Johns.* 202.

*Key*, for the appellee, insisted, 1. That in regard to *Richard Lyles*, there certainly could be no equity to set up the mortgage, whatever might be thought of the equity, as against *Lyles* and wife. *Richard Lyles* purchased under a judgment, which, though rendered for a debt contracted prior to the mortgage, remained due at the date of its execution, and afterwards. The creditor therefore *trusted him*, after the mortgage, and his debt is consequently saved by the act of 1785, *ch.* 72. *sec.* 11.

2. At the time these judgments were obtained nothing was known of the mortgage. The liens created by them, are therefore unaffected by it. Suppose, instead of judgments, they had taken mortgages, and had them recorded in time, and without knowledge of the mortgage to complainant, would theirs not have overreached his? The mere delivery to them of the title papers would have been sufficient. *Sugden Vendor's*, 366.

3. The mortgage to complainant cannot be set up as against *Juliet Lyles*. The act of assembly requires, that the Court shall be satisfied that the mortgagee, who asks to have his mortgage recorded, has a fair equitable title to the premises. The bill, to be sure, asserts this title, but the answers deny it, and affirm that *Otho Sprigg's* notes were received by the complainant, in lieu of any other security. These notes were preferable to the mortgage, being an equi-

table lien on a valuable real estate. By taking a security of this description, the vendor destroys his lien. 4 *Wheat.* 255. If husband and wife give a mortgage of the wife's land, for the husband's debt, and the mortgage by any circumstance becomes inoperative, it is not competent for the husband, alone, afterwards to revive it.

EARLE, J. delivered the opinion of the Court.

The record of this case has been attentively examined, and we are unable to discover therein, any particular, in which the equity jurisdiction of *Montgomery* County Court has erred. The disputed land in this cause was sold in 1817, and almost three years elapsed before the seller took from the purchaser, so much as a bond for his purchase money, and he seemed satisfied with no other security for it, than what the land sold of itself afforded. On the 3d December, 1819, he conveyed the land to the wife of the purchaser, and at the same time received from him obligations for his money, secured by a mortgage of the husband and wife, and made payable, with interest, in three equal annual payments. This mortgage deed was not recorded within due time, but the omission to record appears to have happened without any fraudulent design, or intention of the party, and such intention is no where in the proceedings imputed to him. It ought then, we think, to be decreed to be recorded, unless the security it gives to the debt has been abandoned for other security given by the purchaser, and accepted by the seller. This has been strenuously urged upon us, but we cannot perceive in the subsequent transactions between the parties, the smallest appearance of an abandonment. *Otho Sprigg's* paper to a larger amount was assigned in December, 1821, with a formal guaranty of the payment of it. It was, however, the guaranty of an insolvent man, and the assignment was unaccompanied by any understanding that this security was to be alone relied upon. The circumstances seem to exclude the idea that it could have been so relied upon. *Otho*

*Sprigg* had failed in 1820, and the mortgage by which the assigned paper was secured, proved to be defectively acknowledged; and it was uncertain whether other creditors had not preferences over the equitable lien on the mortgaged premises. In this state of things it would have been most unwise to give up any other security for this, and the inference cannot be made, without stronger facts to justify it than are here presented to us. We are therefore of opinion, that the Court below were right, in decreeing the mortgage from *Robert Lyles* and wife to be recorded, and a sale under the mortgage for the payment of the mortgage money. We also approve of the decree to dismiss the complainant's bill as against *Richard Lyles.* This part of the case rests upon different grounds from the former. The object of the parties appears to have been to secure a home for *Robert Lyles*, and perhaps too much zeal, and some indiscretion were manifested by them in endeavoring to attain it by the means used to prevent *Leonard Hays* from bidding for the life estate. The scheme, however, did not take, and *Richard Lyles* was made to pay the full value of it; and it is certain he became the purchaser, with the approbation, if not at the instance, of *John Sprigg*, who was relieved by the purchase from the payment of a large sum of money for *Robert Lyles*, for whom he was security.

DECREE AFFIRMED.